UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDUARDO G. VELEZ SR., )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>CHICAGO POLICE OFFICERS CESAR )<br>KURI, STAR NO. 16202, BRIAN MCHALE, )<br>STAR NO. 8721, DUCAR, ALEJANDRO )<br>SANCHEZ, STAR NO. 2141, RICKY )<br>HUGHES, STAR NO. 8666, GERALD LEE, )<br>STAR NO. 15949, FEDERICO )<br>ANDAVERDE, STAR NO. 2530; CITY OF )<br>CHICAGO, )<br>)<br>    Defendants. ) | No. 20 C 4239<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

Defendant Chicago Police Officers Cesar Kuri, Brian McHale, Alejandro Sanchez, Ricky Hughes, Gerald Lee, and Federico Andaverde (collectively, the "Defendant Officers") executed a search warrant at a multi-unit residence that Plaintiff Eduardo G. Velez, Sr. owns. The Defendant Officers and Defendant Ducar took possession of cash seized from a safe in Velez's basement apartment. Although the Defendant Officers and Ducar ultimately returned a portion of the seized funds to Velez, Velez filed this lawsuit against them under 42 U.S.C. § 1983, alleging that the Defendant Officers unreasonably entered into his apartment and unreasonably seized his money. In his third amended complaint, Velez also brings a claim against Defendant City of Chicago (the "City"), seeking to hold the City liable under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). The City has filed a motion to dismiss Velez's *Monell* claim. Because Velez has not sufficiently pleaded facts to support his *Monell* claim, the Court grants the City's motion.

## BACKGROUND[1]

Velez owns a multi-unit building at 9517 S. Exchange, Chicago, Illinois, where he lives in the basement apartment. On May 18, 2020, while Velez was not at home, the Defendant Officers executed a search warrant at the building. The Defendant Officers searched Velez's apartment, despite not having legal cause to do so. Although they did not arrest Velez for any crime, they did seize money they found in a safe in Velez's apartment. The Defendant Officers and Ducar later notified Velez that the Chicago Police Department ("CPD") had seized his money. On October 7, 2020, a CPD officer with the asset forfeiture unit sent Velez a letter offering to return $62,980, an amount less than that seized from Velez's safe on May 18.

The Defendant Officers were members of CPD's postal interdiction team. This team locates and searches suspicious boxes and packages delivered through the mail, Federal Express, and UPS. Upon locating a suspicious package, the team conducts further investigation that often leads to a search warrant of the package. If the search reveals the package contains contraband, the team then obtains a search warrant for the package's destination. In obtaining the search warrant for the destination residence, the team requests permission to search not only the box but also "any other substances, proof of residency, all narcotics paraphernalia, all narcotics records from these transactions." Doc. 56 ¶ 39. The team places a tracking device in the box, and an undercover officer delivers the box to the residence by posing as a delivery person. Officers then execute the search warrant, searching the entire residence even if they quickly locate the package.

---

[1] The Court takes the facts in the background section from Velez's third amended complaint and presumes them to be true for the purpose of resolving the City's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

To state a *Monell* claim, Velez must allege (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted).

Velez claims that the City maintains a custom of obtaining and executing overly broad search warrants that are not appropriately limited to places and things in which police officers

have probable cause to believe they will find contraband. He also contends that the City has failed to train the postal interdiction team in obtaining and executing appropriately limited search warrants. The City argues that Velez's *Monell* claim fails because he has alleged only an isolated incident and he has not alleged any policymaker's knowledge or deliberate indifference. With respect to Velez's claim that the City maintains a custom or practice of obtaining and executing overly broad search warrants, the City maintains that Velez's conclusory allegations do not suggest the required widespread pattern or practice. *See Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (a *Monell* claim requires "a *widespread practice* that permeates a critical mass of an institutional body," not "individual misconduct"); *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) ("[I]t is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event." (citation omitted) (internal quotation marks omitted)). To determine whether Velez has sufficiently alleged a widespread practice, courts sometimes consider allegations of other similar instances of misconduct. *See Carmona v. City of Chicago*, No. 15-cv-00462, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018) (collecting cases). But this is not a requirement, and, at the pleading stage, Velez need not "identify every other or even one other individual" whose residences CPD searched based on allegedly overly broad warrants. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (federal courts may not apply a "heightened pleading standard" to *Monell* claims); *see Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (at summary judgment, a single incident cannot establish a *Monell* claim, but at the motion to dismiss stage, a plaintiff "need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists").

Alternatively, courts have looked to other factual allegations to buttress a plaintiff's claim of a widespread policy or practice. *See Mendez v. City of Chicago*, No. 1:18 C 6313, 2019 WL 4934698, at *3 (N.D. Ill. Oct. 7, 2019) (reference to Department of Justice report on CPD's use of excessive force during foot chases supported *Monell* failure-to-train claim at the pleading stage); *Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) (reference to two reports highlighting CPD's use of excessive force similar to plaintiff's allegations suggested existence of widespread practice, allowing *Monell* claim to proceed). In *White*, for example, the plaintiff alleged that the defendant officer sought an arrest warrant, knowing he lacked probable cause, based upon conclusory allegations that the plaintiff had committed a criminal offense. 829 F.3d at 840–41. The plaintiff also attached a copy of the "standard complaint form" that did "not require specific factual support for an application for an arrest warrant." *Id.* at 841, 844. The Seventh Circuit found that plaintiff's allegations of a widespread practice of requesting warrants based on conclusory allegations, "[t]ogether with the individual claim against [the officer] and the standard printed form," sufficed to state a claim. *Id.* at 844.

Here, Velez took discovery that he represented would make a *Monell* claim appropriate. But his third amended complaint still includes only conclusory allegations that do not "permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Thus, Velez has not pleaded enough facts to nudge his *Monell* claim based on a custom of obtaining and executing overly broad warrants "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

5

As for the City's alleged failure to train its officers to obtain appropriately limited warrants, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Liability on a failure-to-train theory requires that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "A municipality can be held liable under a theory of failure to train if it has actual knowledge of a pattern of criminally reckless conduct and there is an obvious need to provide training to avert harm, even if the prior acts have yet to result in tragedy." *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021). While "failure-to-train liability does not require proof of widespread constitutional violations before that failure becomes actionable," *id.* at 731, Velez's individual experience would only support such a claim if the alleged overly broad search was a "highly predictable consequence of a failure to equip law enforcement with specific tools to handle recurring situations," *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997); *see also Flores*, 997 F.3d at 731 ("[A] single violation can suffice where a violation occurs and the plaintiff asserts a recurring, obvious risk."). Here, however, Velez does not plead any facts to support the conclusion that the City had actual knowledge of the use of overly broad search warrants or that a recurring risk of harm existed so as to make the need for further training concerning the proper scope of search warrants obvious. *See Dawson v. Dart*, No. 17-cv-00283, 2020 WL 1182659, at *4 (N.D. Ill. Mar. 12, 2020) ("Dawson, however, does not allege sufficient facts supporting her claim that that the Sheriff's officers 'so often violate constitutional rights that the need [for] further training' was 'plainly obvious' to the Sheriff." (quoting *Canton*, 489 U.S. at 390 n.10)); *Miller v. City of Chicago*, No. 19 CV 4096, 2019 WL 6173423, at *2 (N.D. Ill. Nov. 20, 2019) ("There is no allegation to support an inference that unlawful hotel searches

6

are so rampant that the failure to train reflects a deliberate indifference to the constitutional rights of guests like Miller."); *cf. Flores*, 997 F.3d at 733–34 (allegations of a city's failure to train sufficed at the pleading stage where the plaintiff alleged that the city "knew that its officers routinely drove over 50 miles per hour, but it took no steps to prevent this behavior"). Therefore, Velez also has not sufficiently pleaded a *Monell* claim based on the City's failure to train its officers.[2]

## CONCLUSION

The Court grants Defendant City of Chicago's motion to dismiss Count III of Plaintiff's third amended complaint for *Monell* liability [67]. The Court dismisses Velez's *Monell* claim (Count III). Because this is the first time the Court has substantively addressed the *Monell* claim and Velez indicates he can provide additional details to support his claim, the Court dismisses the *Monell* claim without prejudice and allows Velez until July 1, 2022 to file a fourth amended complaint that adequately sets forth a basis for *Monell* liability against the City.

Dated: June 6, 2022

_____
SARA L. ELLIS
United States District Judge

---

[2] The City also argues that the Court should dismiss the *Monell* claim because the third amended complaint alleges that the Defendant Officers obtained a valid warrant authorizing the search, providing a lawful explanation for the Defendant Officers' actions. But the Court cannot conclude on the basis of the pleadings alone that no underlying constitutional violation occurred here, where Velez alleges that the Defendant Officers did not have probable cause to search his unit or to seize his money, and that the search warrant included incomplete or incorrect information.