IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Eduardo G. Velez Sr.** | ) |
| Plaintiffs, | ) Case No.: 20 cv 4239 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| **Chicago Police Officers CESAR KURI, STAR NO. 16202, BRIAN MCHALE, STAR NO. 8721, DUCAR, ALEJANDRO SANCHEZ, STAR NO. 2141, RICKY HUGHES, STAR NO. 8666, GERALD LEE, STAR NO. 15949, FEDERICO ANDAVERDE, STAR NO. 2530; CITY OF CHICAGO** | ) Magistrate Judge Jeffrey T. Gilbert |
| Defendants. | ) |

## FOURTH AMENDED COMPLAINT

### JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343, 1331 and 1367.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

### PARTIES

3. At all times herein mentioned, Plaintiff Eduardo G. Velez Sr. (hereinafter "Plaintiff") was and is a citizen of the United States, and was within the jurisdiction of this court.

4. At all times herein mentioned Defendants City of Chicago Police Officers,

1

Cesar Kuri, Star No. 16202, Brian McHale, Star No. 8721, Ducar, Ricky Hughes, Star No. 8666, Gerald Lee, Star No. 15949, Federico Andaverde, Star No. 2530, Alejandro Sanchez, Star No. 2141 and other unnamed and as yet unknown Defendants were employed by the City of Chicago Police Department, or other governmental police or other agency and were acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. These Defendants are being sued in their individual capacities.

5. Defendant City of Chicago is a municipality with the state of Illinois and operates the Chicago Police Department.

## FACTUAL ALLEGATIONS

6. Plaintiff is the owner of the residence at 9517 S. Exchange, Chicago, Illinois. He owns that property and many other properties in the Chicago area. Plaintiff is 78 years old.

7. On or about May 18, 2020, at approximately 3:00 pm, Plaintiff inhabited the basement apartment of the multi-unit residence at 9517 Exchange, Chicago, Illinois. Plaintiff was not home at the above stated date and time.

8. There were other adults who also lived at that residence at the above stated date and time.

9. At that date, time and place, defendants and each of them (except Defendant Ducar) entered the multi residence building including Plaintiff's residence with a search warrant.

10. The search warrant and information that the Defendant (the affiant for the search warrant) placed into the search warrant affidavit was reckless and/or overbroad and based upon information that was known to be incomplete and/or incorrect.

11. After the Defendants entered the multi-unit residence, they then went to Plaintiff's particular apartment within that residence and conducted a search of that apartment.

2

They had no legal cause to enter Plaintiff's apartment and they did not find any illegal contraband or other evidence of illegal activity within that residence.

12. The Defendants did locate a safe that Plaintiff maintained in his apartment.

13. Without legal cause, the Defendants broke into Plaintiff's safe and took his money out of the safe. They also further unlawfully damaged property in the apartment.

14. There was no legal or probable cause to enter Plaintiff's apartment and/or take any of Plaintiff's property, including his money.

15. Plaintiff was not arrested for any crime in that he had not committed a crime and there was no legal cause to arrest the Plaintiff.

16. Subsequently, Defendants, including Defendant Ducar notified Plaintiff that the CPD had seized Plaintiff's money.

17. Despite being requested to return the money it has not been returned and no forfeiture notice was ever served on the Plaintiff.

18. Thereafter, on or about October 7, 2020, by letter, an officer with the Asset Forfeiture Unit sent a letter to Plaintiff offering to return the money. The amount of money offered to be returned was $62,980.00. This was significantly less than the amount of money taken from Plaintiff.

19. The money that was returned was not timely returned.

20. By reason of the above-described acts and omissions of Defendants, Plaintiff sustained injuries, including but not limited to, loss special damages, humiliation and indignities, and suffered great physical, mental and emotional pain and suffering all to his damage in an amount to be ascertained.

21. The aforementioned acts of defendants were willful, wanton, malicious,

oppressive and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

22. By reason of the above-described acts and omissions of Defendants, Plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action so that he might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

## COUNT I

### PLAINTIFF AGAINST ALL DEFENDANTS (EXCEPT DUCAR) FOR AN UNREASONABLE ENTRY INTO PLAINTIFF'S RESIDENCE

23. Plaintiff hereby incorporates and realleges paragraphs one (1) through twenty- two (22) hereat as though fully set forth at this place.

24. The Defendants and each of them unlawfully procured a search warrant for Plaintiff and his residence, by either recklessly or knowingly making it overbroad and/or incorrect.

25. The Defendants commenced to enter and search Plaintiff's residence without the required lawful search warrant, and they conducted a search in an unreasonably destructive and overbroad manner.

26. The arbitrary intrusion by Defendants, into the security and privacy of Plaintiff's person was in violation of Plaintiff's Constitutional Rights and not authorized by law. The individual Defendants and each of them violated the Plaintiff's rights in the following manner: the entry into and search of Plaintiff's residence and his person was without any legal cause. The foregoing was unnecessary, unreasonable and excessive, and was therefore in violation of

Plaintiff's rights. Therefore, the Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT II

### PLAINTIFF AGAINST ALL INDIVIDUAL DEFENDANTS FOR AN UNREASONABLE SEIZURE

27. Plaintiff hereby incorporates and realleges paragraphs one (1) through twenty- two (22) hereat as though fully set forth at this place.

28. Plaintiff is informed believes and thereon alleges that Defendant Ducar had control of the money after it was seized and refused to return it. When some of the money was finally returned, money was missing.

29. As alleged above, the Defendants seized money from the Plaintiff.

30. There was no legal cause to seize the money.

31. As noted, some of the money was eventually returned. It was not timely returned. The money that was returned was significantly less than what was taken.

32. By reason of the conduct of Defendants and each of them, Plaintiff was deprived of rights, privileges and immunities secured to him by the Fourth and/or Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

33. The arbitrary intrusion by Defendants, into the security and privacy of Plaintiff's person was in violation of Plaintiff's Constitutional Rights and not authorized by law. The individual Defendants and each of them violated the Plaintiff's rights in the following manner:

   a. they seized and broke Plaintiff's possessions including a safe, and they seized money.

   b. The money seized has been held for an unreasonable and unlawful period of time.

   c. The money that was returned was less than what was taken, thus, resulting in an

5

ongoing unlawful seizure of the money not returned.

d.  Defendants have not provided due process for the return of the money.

34. The foregoing was unnecessary, unreasonable and excessive, and was therefore in violation of Plaintiff's rights. Therefore, the Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT III
## PLAINTIFF AGAINST THE CITY OF CHICAGO *(Monell Liability)*

35. Plaintiff hereby incorporates and realleges paragraphs one (1) through twenty-one (21) hereat as though fully set forth at this place.

36. At all times relevant to the events described in this Complaint, and for a period of time prior to and subsequent thereto, there is a widespread custom and practice within the City of Chicago Police Department to undertake constitutional violations in the context of the postal interdiction team (or similarly engaged teams) in connection with search warrants and the execution of search warrants

37. The postal interdiction team is tasked with locating and searching suspicious boxes and packages that are being delivered through the mail and through Federal Express and UPS.

38. When a suspicious box is located, further investigation is done that will often lead to a search warrant for the residence to which that box or package is being delivered.

39. In circumstances where the examination of the contents of the box or package is discovered to contain contraband, the postal interdiction team then obtains a search warrant for the residence at the address where the box or package is to be delivered. The box or package then has tracking devices placed into the box and an undercover officer delivers the

specific box to the residence posing as a delivery person.

40. The officers obtaining the search warrant know nothing more about the residence or the residents who live at the address where the box or package is being delivered, other than a box with narcotics is to be delivered there. Nevertheless, the officers write the search warrant and affidavit to include locating not only the box, but also "…any other substances, proof of residency, all narcotics paraphernalia, all narcotics records from these transactions…".

41. For example, Defendant Kuri in this case testified at his deposition that he obtained the search warrant that led to the search of Plaintiff's residence. He further testified that he knew nothing about the residents, or any drug activity at the residence that was subject to the search warrant.

42. Defendant Kuri also testified that he knew nothing about any other criminal activity at the residence subject to the search warrant. Defendant Kuri indicated in the search warrant that surveillance would be set up before, during, and after the controlled delivery of the suspect box, but, in fact, the surveillance is done solely to determine the type of residence being searched and that the street address on the residence matches that of the search warrant. The surveillance does not obtain further evidence of criminal activity.

43. Defendant Kuri also testified that as a member of the postal interdiction team he routinely does search warrants similar to that of this case. He also testified that in some months he might do as many as 5 such search warrants and in other months he might do none.

44. Defendant Kuri also testified that other members of his postal interdiction team also do similar search warrants in that by virtue of the warrant the officers search for things other than the specific box or package that they have knowledge about, despite not

7

having knowledge about other things requested to be subject of the search warrant.

45. The officers executing a search warrant that is procured by the postal interdiction team (or one similar) understand the search warrant to mean that they can search the entire residence *in addition to the specific box* that they know to contain narcotics and which has been delivered to the residence.

46. For example, Defendant Kuri testified that in this case, the box was easily located and then a search continued, despite the fact that the officers had no other information about any criminal activity, other than the delivery of the box.

47. In the circumstance above described, the officers have no probable cause to obtain a search warrant for anything other than the box or package.

48. The officers executing the search warrant will customarily search the entire residence for all the things stated in the warrant even when the box or package, that is the focus of the warrant, is quickly located and there is no probable cause to search for anything other than the box or package.

49. The officers executing the search warrant will customarily and recklessly break objects in the house to be searched and otherwise trash the house in the course of their search even when the box or package is quickly located and there is no probable cause or reasonable need to do any further searching.

50. For example, Defendant McHale testified that it is typical that when an officer executing a search warrant in a room with a lot of objects, that officer will just pile the objects up in a place as opposed to searching and putting the items back. This is despite the fact that the primary objective of the search, the suspect package or box, has been already located.

51. The Sergeant of the Postal Interdiction team, Sanchez, confirmed that nothing

is known about the residents of the subject house, and that even if the suspect box is quickly found, officers will continue to look for other things, even though they have no information about other illegal activity.

52. The widespread customs and practices alleged above, were the moving force for the violations of Plaintiff's rights, in that (1) the Defendants obtained a search warrant for an entire residence of various things even though they only had information about a specific box; and (2) the box containing the suspect narcotics, as alleged above, was quickly and easily found, but nevertheless, the other parts of the house were damaged and ransacked, including a safe in the basement apartment of the house (where Plaintiff, the owner of the house, lived) was broken into and had a large quantity of money (which was lawfully obtained) seized from the safe.

53. By reason of the above-described acts and omissions of Defendants, Plaintiff sustained injuries, including but not limited to, loss special damages, humiliation, and indignities, and suffered great physical, mental and emotional pain and suffering all to his damage in an amount to be ascertained.

54. The foregoing was unnecessary, unreasonable, and excessive, and was therefore in violation of Plaintiff's rights. Therefore, the Defendant, City of Chicago is liable to Plaintiff pursuant to 42 U.S.C. § 1983.

**WHEREFORE**, the Plaintiff, by and through his attorneys, ED FOX & ASSOCIATES, requests judgment as follows against the Defendants, and each of them:

1. That the Defendants be required to pay Plaintiff's general damages, including emotional distress, in a sum to be ascertained;

2. That the Defendants be required to pay Plaintiff's special damages;

3. That the Defendants be required to pay Plaintiff's attorneys fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any

other applicable provision;

4. That the Defendants, except the City of Chicago be required to pay punitive and exemplary damages in a sum to be ascertained;

5. That the Defendants be required to pay Plaintiff's costs of the suit herein incurred; and

6. That Plaintiff has such other and further relief as this Court may deem just and proper.

                BY:    <u>s/ Edward M. Fox</u>
                        ED FOX & ASSOCIATES
                        Attorneys for Plaintiff
                        300 West Adams
                        Suite 330
                        Chicago, Illinois 60606
                        (312) 345-8877
                        efox@efox-law.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

                BY:    <u>s/Edward M. Fox</u>
                        ED FOX & ASSOCIATES
                        Attorneys for Plaintiff
                        300 West Adams
                        Suite 330
                        Chicago, Illinois 60606
                        (312) 345-8877
                        efox@efox-law.com